UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LESLIE D. COFFEY, ) | |
| ) | |
| *Plaintiff*, ) | No. 1:16-cv-222-SKL |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM AND ORDER

Plaintiff Leslie D. Coffey ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB"). Each party moved for a judgment [Docs. 16 & 18] with supporting briefs [Docs. 17 & 19]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for judgment on the pleadings shall be **DENIED**; (2) the Commissioner's motion for summary judgment shall be **GRANTED**; and (3) the decision of the Commissioner shall be **AFFIRMED**.

I.  ADMINISTRATIVE PROCEEDINGS

As agreed by the parties, and as reflected in the transcript of the administrative proceedings [Doc. 12 ("Tr.")], Plaintiff filed for DIB on October 23, 2012, alleging disability beginning August 1, 2012. After Plaintiff's claims were denied initially and upon reconsideration, a hearing on Plaintiff's claims was held before an administrative law judge ("ALJ") during which Plaintiff was represented by counsel. The ALJ issued a decision on March 13, 2015, finding that Plaintiff was not under a "disability" as defined in the Social Security Act

("Act") (Tr. 10-23). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

As documented in the ALJ's decision, Plaintiff was born September 16, 1967 and on the date last insured was 47-years-old, which is defined as a younger individual age 18-49; had a work history that included work as a demolition crane truck operator; had at least a high school education; and was able to communicate in English (Tr. 22).

### B. Medical Records

Plaintiff alleged disability due to a fractured back, ruptured discs, depression, bipolar disorder, post-traumatic stress disorder, asthma, and acid reflux (Tr. 32, 171). The ALJ summarized various medical records at issue, and both parties summarized portions of the medical records in their respective briefs. The summary of the records will not be repeated herein, but all germane records concerning the physical limitations at issue in this case have been reviewed.

### C. Hearing Testimony

At the January 15, 2015 hearing before the ALJ, Plaintiff and a vocational expert ("VE") testified. The transcript of the testimony at the hearing (Tr. 29-48) has been carefully reviewed.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through December 31, 2014 (Tr. 15). At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since August 1, 2012, the alleged onset date (Tr. 15). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease with a history of compression fracture of the lumbar spine, obesity, depression, bipolar disorder, and post-traumatic stress disorder (Tr. 15-16). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 16-19). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations (Tr. 19-22)[1]. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 22). At step five, after considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 as a framework for the decision and considering the testimony of the VE, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 22-23). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined by the Act at any time from the alleged onset date through the date of the ALJ's decision (Tr. 23).

---

[1] The ALJ determined that Plaintiff retained the RFC "to perform light work as defined in 20 CFR 404.1567(b) except: he can climb no ropes, ladders, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he can have no exposure to extreme cold, vibration, or hazards such as unprotected heights, moving machinery, or open flames; he is able to perform work where interpersonal contact is incidental to the work performed, incidental is defined as interpersonal contact requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment and making change; he can perform work where the complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables, little judgment; and he is limited to work where supervision required is simple, direct, and concrete." (Tr. 19) (bold font in original omitted).

## IV. ANALYSIS

The relevant time period for consideration in this case is from August 1, 2012 (the date Plaintiff alleges he became disabled) through December 31, 2014 (the date his insured status expired). Plaintiff maintains that substantial evidence does not support the ALJ's decision to discount the opinions of two of his treating doctors: (1) orthopedic spine specialist, Scott Hodges, D.O., and (2) internal medicine specialist, Gordon Akin, M.D.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record.[2] *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ

---

[2] A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting *Yang v. Comm'r of Soc. Sec.,* No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004) (internal quotation marks omitted).

is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). A court will not disturb an ALJ's RFC determination as long as the finding is supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### B. Treating Source Opinions

In addressing the medical source opinions concerning Plaintiff's physical limitations at issue herein, the ALJ found:

> In terms of the claimant's physical abilities, the undersigned accords great weight to opinions of Marvin Bittinger, M.D., who opined that the evidence showed exertional and postural limitations consistent with the administrative findings the undersigned now makes, when he reviewed the claim record on April 4, 2013. Saul Juliau, M.D., another such consultant, agreed with this assessment on August 21, 2013. Again, the undersigned assigns weight to these opinions in light of their consistency with the evidence, and the expertise of these sources. The undersigned accords only limited weight to the opinion of Dr. Mullady, who examined the claimant only once, then opined he had limitations consistent with a full range of light work, except that he could stand and walk at most two hours in a work day. This opinion notably conflicts with Dr. Mullady's report at the same time that the claimant had normal balance and gait, and walked without an assistive device; and in any event this opinion was offered only five months after the claimant's allegedly-disabling fall.
>
> The undersigned grants little weight to the opinion of Dr. Vaughn that the claimant was not fully rehabilitated and could use more physical therapy, only in that it has no direct bearing on the work-related activities he could [] then perform despite the advisability of additional treatment. The undersigned accords little weight as well to the opinions of Scott Hodges, D.O., dated May 3, 2013, and Gordon Akin, M.D., dated December 11, 2014. Dr. Hodges indicated that the claimant could sit for at most two hours a day, which is inconsistent both with the level of pain medications he reports taking, and with his apparent ability to sit comfortably during the disability hearing. The record does not reflect he provided as much medical care to the claimant as Dr. Vaughn, whose findings only three months later indicate far less limitation, including normal gait and strength. Similarly, the record does not

> show that Dr. Akin treated the claimant until recently in 2014, even though his opinion states that the claimant had a range of extreme and disabling limitations since August 1, 2014. This range of limitations that would be solely disabling include, but are not limited to, never being able to stoop, knee[l], crouch or crawl. Yet, the repeated range of motion findings mentioned above find the claimant to have always retained some significant range of motion in his lumbar spine, for instance 45 degrees of flexion when seen by Dr. Mullady in January 2013, and 50 degrees of flexion with negative results on the straight leg raise test when seen by Dr. Vaughn in August of that year. These test results are inconsistent with postural activities being totally precluded, and there are no more dire range of motion findings in the treatment reports of Dr. Akin.

(Tr. 21) (citations to exhibits omitted).

As pertinent to the pending motions, Plaintiff initially sought treatment after a fall at work with a physician and physical therapist in Wisconsin for complaints of low back pain, bilateral lower extremity pain, and numbness and tingling in the right lower extremity. After Plaintiff returned to Chattanooga, Tennessee, he sought treatment from Dr. Hodges (Tr. 320-64). Records show that Plaintiff was seen by both Dr. Hodges and his physician's assistant several times (Tr. 320-55, 358-64).

On August 15, 2012, a lumbar MRI—ordered by Dr. Hodges— revealed a compression fracture at the L3 level and a left paracentral disc protrusion at the L4-5 level compressing the left L5 nerve root origin (Tr. 249-50). At a follow-up visit with Dr. Hodges on August 21, 2012, Plaintiff reported continued low back pain that was intensified by any action except lying down (Tr. 351). Dr. Hodges recommended continued bracing, prescribed pain medications, and created a work note to excuse Plaintiff from work until November (Tr. 352). On September 18, 2012, Plaintiff again saw Dr. Hodges and reported no improvement (Tr. 348). Dr. Hodges recommended continued medications, a referral for a lumbar epidural steroid injection, and that Plaintiff remain off work for another six to eight weeks (Tr. 349).

8

On October 15, 2012, Plaintiff was seen by Dr. Hodges's physician's assistant and reported he felt worse since his last visit (Tr. 345). Plaintiff underwent an injection the same day, was told to continue his medication and remain off work until his next appointment in four weeks (Tr. 346). Plaintiff was seen by Dr. Hodges on November 13, 2012, and reported his prior injection was of no help (Tr. 342). Plaintiff reported continued pain, numbness, tingling, and weakness, and Dr. Hodges ordered updated lumbar x-rays, which showed an L3 superior endplate fracture and retrolisthesis of 3 mm on flexion/extension (Tr. 342-43). Dr. Hodges recommended Plaintiff remain off work until his next visit and continue a medication regimen consisting of Endocet, Ambien, Neurontin, and Baclofen (Tr. 343). On January 10, 2013, Plaintiff again returned to Dr. Hodges reporting no overall improvement (Tr. 339). Dr. Hodges created a work note excusing Plaintiff from work until his next appointment in three weeks and recommended no lifting, pushing, or pulling in the interim, and that Plaintiff continue a medication regimen of Endocet, Ambien, Baclofen, and Neurontin (Tr. 340).

At a follow-up appointment on March 7, 2013, Plaintiff reported that his constant pain felt worse since his last visit but that he was not taking his pain medications (Tr. 334). Dr. Hodges instructed Plaintiff to continue his medication regimen and to remain off work with restricted daily activity until his next appointment with restricted activity (Tr. 335). Plaintiff returned on April 23, 2013, was seen by the physician's assistant, and reported continued low back pain with bilateral lower extremity pain and right lower extremity numbness/tingling (Tr. 331). Plaintiff was again instructed to remain off work with restricted daily activity until his next appointment (Tr. 332).

On May 3, 2013, Dr. Hodges completed a "Medical Opinion Form" (Tr. 311-13) opining that, due to severe pain, Plaintiff could not reasonably be expected to be reliable in attending an

9

eight-hour day, forty-hour work week. Dr. Hodges stated it was reasonable to expect that Plaintiff's condition would cause pain and that Plaintiff's subjective complaints of pain seemed reasonable. Dr. Hodges stated that Plaintiff required two hours of bed rest during a normal workday. Dr. Hodges further opined that in an eight-hour workday, five days a week, on a full time basis, Plaintiff could only sit for thirty minutes at one time for two hours total, stand/walk for twenty minutes at one time for a total of one hour, occasionally lift one to five pounds, infrequently lift one to ten pounds, occasionally bend at the waist, occasionally reach above his shoulders, and infrequently stand on a hard surface. Dr. Hodges also opined that Plaintiff had a reasonable medical need to be absent from a full-time work schedule due to illness in excess of twice per month. Dr. Hodges also noted that Plaintiff did not have significant side effects from medication

On July 9, 2013, Plaintiff returned to Dr. Hodges's physician's assistant and reported similar complaints as made in his prior visits and that he felt his condition had moderately worsened since his last visit (Tr. 328).

On August 20, 2013, Plaintiff was seen by orthopedic spine specialist, Barry R. Vaughn, M.D. in Chattanooga, Tennessee (Tr. 317-19). During this one-time visit, Plaintiff reported constant low back pain with lower extremity radiation, numbness, and tingling and Dr. Vaughn noted evidence of bilateral lower extremity edema, decreased lumbar flexion, and moderate tenderness to palpation to the right and left flank. Plaintiff had normal pulses; normal, non-tender muscles; full and normal strength in all of his muscles; normal gait and coordination; and no swelling or tenderness over his spine. Plaintiff had a negative straight leg raising test. Concerning Plaintiff's lumbar fracture, Dr. Vaughn noted Plaintiff had never received physical therapy after his brace was discontinued and opined he never completely rehabilitated from his

work injury and would benefit from physical therapy. Dr. Vaughn also opined Plaintiff could not return to his previous work activity without appropriate rehabilitation (Tr. 319). Regarding the L4-5 disc protrusion, Dr. Vaughn opined Plaintiff "might be a candidate for surgery since his symptoms have not resolved with conservative treatment" and that since he had not completed treatment "it would be impossible for the Plaintiff to return to his previous level of employment until [the disc protrusion] was addressed" (Tr. 319).

On October 1, 2013, Plaintiff returned to Dr. Hodges's physician's assistant and reported that he had been involved in a motor vehicle accident two weeks prior and felt worse since his last visit (Tr. 325). Plaintiff was instructed to continue with restricted activity and return in two to three weeks (Tr. 326). Instead, Plaintiff returned to see Dr. Hodges more than three months later, on January 21, 2014, and reported intensified pain with activity, diminished pain with lying down, and no improvement since his prior visit (Tr. 320). Dr. Hodges wrote prescriptions for Plaintiff to continue his medication regimen of Neurontin, Baclofen, and Dilaudid, and also wrote another work note for Plaintiff to remain off work until his next appointment (Tr. 321).

As instructed, Plaintiff returned on April 17, 2014, and he reported to Dr. Hodges's physician's assistant that he had constant pain intensified by activity and diminished with rest (Tr. 362). Plaintiff's prescriptions for Neurontin, Baclofen, and Dilaudid were refilled and another work note was issued for Plaintiff to remain off work until his next visit (Tr. 363). Plaintiff returned for his last visit with Dr. Hodges's physician's assistant on July 31, 2014 to follow up on his MRI for the lumbar spine (Tr. 358). Plaintiff again reported similar symptoms of low back pain, right lower extremity pain, numbness, tingling, and weakness (Tr. 358). Plaintiff's most recent MRI from on July 15, 2014 showed evidence of an old compression fracture of L3, a posterior disc protrusion at L4-5 with an annular tear with associated moderate

11

neural foraminal narrowing, transitional vertebra at the lumbosacral junction partially sacralized on the left side of L5, and right renal cysts/masses (Tr. 359, 380-381). It was again recommended that Plaintiff remain off work until his next appointment and continue taking his medications (Tr. 360).

Plaintiff relocated to Arizona and he began treatment with Dr. Akin (Tr. 371).[3] On September 30, 2014, Plaintiff reported feeling miserable due to his pain, and that he had to frequently change positions throughout the day with only a reasonable degree of comfort when reclining (Tr. 368). At Plaintiff's next appointment on November 13, 2014, Plaintiff reported doing about the same (Tr. 369).

On December 11, 2014, Dr. Akin completed a medical source statement (Tr. 374-79) opining that in a hypothetical eight-hour workday, Plaintiff could only sit 20 minutes at one time for two hours total, stand 20 minutes at one time for two hours total, walk 15 minutes at one time for one hour total, and would have to lie down/rest the remainder of the workday. Dr. Akin also stated that Plaintiff could never lift up to ten pounds; could occasionally reach overhead bilaterally; Plaintiff could occasionally push/pull with his bilateral upper extremities; could occasionally use his bilateral lower extremities for the operation of foot controls; could occasionally balance and climb stairs and ramps; could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl; could never tolerate exposure to unprotected heights or vibration; could occasionally tolerate moving mechanical parts and operating a motor vehicle; could never travel without a companion over 100 miles; and Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. Dr. Akin also opined that Plaintiff's chronic pain limitations had lasted 12 consecutive months and had begun August 1, 2012.

---

[3] Dr. Akin ordered the lumbar MRI that was reviewed at Plaintiff's last appointment at Dr. Hodges's office (Tr. 373).

As noted above, the ALJ gave "little weight" to the opinions of Dr. Hodges and Dr. Akins (Tr. 21). In considering a claim for disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 404.1527(c)(2). But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinions at issue are not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give the opinions: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ is not required to explain how he considered each of the above factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) (the ALJ must "give good reasons in [the] notice of determination or decision for the weight . . . give[n the] treating source's opinion."). "[A] properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians [but] the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013) (citations omitted).

The ALJ stated that little weight was given to the opinion of Dr. Hodges because "Dr. Hodges indicated that the claimant could sit for at most two hours a day, which is inconsistent both with the level of pain medications he reports taking, and with his apparent ability to sit

13

comfortably during the disability hearing." (Tr. 21). In discussing Dr. Hodges's opinion, the ALJ also inaccurately stated that Dr. Hodges did not provide as much care to Plaintiff as Dr. Vaughn did, but accurately stated that Dr. Vaughn found far fewer limitations than Dr. Hodges (Tr. 21). Plaintiff argues the ALJ's reasoning for giving Dr. Hodges's opinion little weight is underdeveloped and inaccurate. Plaintiff argues the ALJ's focus on the sitting limitations opined by Dr. Hodges ignores other aspects of his opinion and that the ALJ's observations during the 20-minute hearing ignores Plaintiff's testimony, which indicated he was not sitting comfortably as follows:

> Q   Okay. Any problems with sitting?
>
> A   Oh, it's the worst. I mean, like sitting right here now, it's - - sitting is by far the worst. By all things I do, sitting is it. And it's just - - yeah.

(Tr. 40).

> Q   Sitting, though, how long can you sit before you need to rest?
>
> A   Not long. I'd like to go lay down right now, to be honest with you. I mean, it's 10 or 15, 20, 30 minutes tops.
>
> Q   Thirty minutes is your max for sitting at one time?
>
> A   Yeah. I mean –

(Tr. 41). Plaintiff also reported during the hearing that he did not take narcotic medication on a daily basis due to his fear of addiction, but did take prescribed medications for pain, including Gabapentin and Baclofen, on a daily basis, and Morphine one to two times a week (Tr. 42-44).

I first will address the ALJ's observation of Plaintiff during the hearing. As argued by the government, the ALJ is permitted to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." *See*

SSR 96-7p.[4]; *see also, e.g., Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 430 (6th Cir. 2015) (treating doctor's assertion that claimant was unable to walk from the parking lot to work was "seemingly contradicted by the fact that Blankenship was able to walk unassisted from her car to the room where the hearing was being held.") and SSR 16-3p (ALJ may consider personal observations of the claimant with the individual's statement and with the evidence in the file). The ALJ should consider Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of his symptoms and this analysis is "inherently intertwined" with the RFC assessment. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at *10 n.7 (E.D. Tenn. May 18, 2016) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.")).

Pain symptoms can be difficult to quantify so the determination is often influenced by a plaintiff's credibility. *See Hickey-Haynes v. Barnhart,* 116 F. App'x. 718, 726-27 (6th Cir. 2004) (holding an ALJ may take a plaintiff's credibility into account when making a determination regarding the severity of pain complaints). There is no requirement that an ALJ

---

[4] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.* SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, after the ALJ issued the decision at issue. Moreover, SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter. As such, it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, at n.1 (6th Cir. 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, the Court will occasionally refer to the ALJ's analysis using the same term.

must accept a physician's or plaintiff's allegation of a disabling level of pain without critical review. To the contrary, "[a]lthough the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide . . . if the claimant's pain is so severe as to impose limitations rendering [him] disabled." *Dunn v. Comm'r of Soc. Sec.,* No. 1:15-CV-176, 2016 WL 4194131, at *7 (S.D. Ohio July 15, 2016), *report and recommendation adopted*, 2016 WL 4179586 (S.D. Ohio Aug. 8, 2016) (quotation marks, alterations and citation omitted). Plaintiff's testimony does not invalidate the ALJ's observations. Indeed, Plaintiff has not challenged the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain symptoms are not entirely credible.

As argued by the government, a limitation to sitting only two hours per day is an extreme limitation. In discussing this aspect of Dr. Hodges's opinion, the ALJ inaccurately stated that Dr. Hodges did not provide as much care to Plaintiff as Dr. Vaughn did, but accurately stated that Dr. Vaughn found far fewer limitations than Dr. Hodges (Tr. 21). Plaintiff argues the inclusion of this mistake requires remand. Plaintiff cites to *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009) ("Because the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence."). *White*, however, did not address a situation such as here where accurate reasons were also given for assigning little weight to the treating physician's opinion. To the contrary, in *White* the claimant was diagnosed with an adjustment disorder and depression, and assigned a GAF score of 55, indicating moderate symptoms, but the ALJ totally discounted the claimant's mental impairments in determining the RFC and inaccurately stated the antidepressants were for

16

pain relief and sleep without noting the pain and lack of sleep were causing depression. *Id*. at 787-88.

To the extent the ALJ credited Dr. Vaughn's opinion over Dr. Hodges's opinion based on the mistaken belief that Dr. Vaughn provided more treatment than Dr. Hodges, this cannot be considered a good reason at all. However, this mistaken remark does not mandate remand because the ALJ provided other good reasons in support of his determination to give little weight to the opinion of Dr. Hodges and inclusion of this reason is harmless. As argued by the government, Dr. Vaughn saw Plaintiff a few months after Dr. Hodges issued his opinion, and Dr. Vaughn's examination results dispute the extreme limitations Dr. Hodges described on his form.

Plaintiff contends the ALJ's analysis of Dr. Hodges's opinion was overly focused on Dr. Hodges's sitting limitation and underdeveloped on the remainder of his opinion because the ALJ failed to discuss other limitations such as for standing/walking, lifting, and reaching. As argued by the government, however, the ALJ's analysis does not have to be all inclusive as long as it is supported by substantial evidence. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (holding ALJ's brief one-sentence rejection of treating physician's opinion satisfied "good reasons" requirement because it reached several of the factors an ALJ must consider in addressing such an opinion). Plaintiff cites no requirement that the ALJ discuss each aspect of a doctor's opinion before giving it little weight so long as he has a good reason supporting the weight given. And, as argued by the government, Plaintiff offers no authority supporting a requirement that the ALJ defer to the remainder of Dr. Hodges's opinion in light of the ALJ's determination that the suggested sitting limitation was not well supported. The ALJ's discussion of Dr. Hodges's opinion adequately informed Plaintiff (and the reviewing court) of the reasons that opinion was given little weight.

The same conclusion applies with respect to the weight given to Dr. Akin's opinion. The ALJ accorded it little weight because Dr. Akin had only recently treated Plaintiff a few times, but applied his opinion back to 2012 and his opined postural limitations of never being able to stoop, kneel, crouch, or crawl were inconsistent with records from Dr. Mullady at an exam in January 2013 and with records from Dr. Vaughn at a visit in August 2013 (Tr. 21, 379). These reasons pass the requirements of the treating source rule contrary to Plaintiff's counterarguments.

A properly balanced analysis, as was performed by the ALJ in this case, can allow the Commissioner to defer ultimately more to the opinions of consultative doctors than to those of treating physicians. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). It is not error to ascribe more weight to a non-examining or examining physician than to a treating physician in appropriate cases. *See, e.g., Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996)); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." (Citations omitted)).

The ALJ's decision discusses the evidence considered, noting not only the medical source statements but also Plaintiff's medical history, the medical signs and laboratory findings, diagnostic imaging, the effects of treatment, the reports of daily activities, and other observations. These are all the appropriate types of relevant evidence that an ALJ must consider in evaluating medical opinions and formulating an RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The Court **FINDS** the ALJ's narrative discussion described sufficient

evidence to support the ALJ's RFC determination and evaluation of the medical evidence and opinions.

Accordingly, because the ALJ's hypothetical question included the limitations the ALJ found credible and incorporated into the RFC determination, the ALJ could rely on the VE's testimony to support the finding that Plaintiff could perform jobs that exist in sufficient number in the national economy. *See Graley v. Comm'r of Soc. Sec.*, 646 F. App'x 414, 417 (6th Cir. 2016); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Thus, the Court **CONCLUDES** that the ALJ's determination that jobs existed in significant numbers in the national economy that Plaintiff could perform was supported by substantial evidence in the record.

An ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform a reduced range of light work. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence. Because the ALJ reached his decision using correct legal standards and because those findings are supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *See, e.g., Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (Internal quotation marks omitted)).

## V. CONCLUSION

For the foregoing reasons,

1) Plaintiff's motion for judgment on the pleadings [Doc. 16] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 18] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE